# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **TONIA L. JONES**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 11-215 (RMC)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

The District of Columbia moves to dismiss, in part, the Second Amended Complaint filed by Plaintiffs Tonia L. Jones and Kenniss M. Weeks, who are female police officers in the D.C. Metropolitan Police Department. Plaintiffs complain of employment discrimination based on their sex (female) and sexual orientation (lesbian). Plaintiffs bring their claims under the District of Columbia Human Rights Act ("DCHRA"), Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1983. The District argues that certain DCHRA claims must be dismissed because Plaintiffs failed to give notice of their claims to D.C's Mayor, as required by the D.C. Code; that their claims under § 1983 must be dismissed because they are time barred; and that claims based on alleged violations of their First and Fifth Amendment rights must be dismissed because they are without merit. The District concedes that Plaintiffs' Title VII claims should proceed.

Plaintiffs ask the Court to consider documents that are outside the pleadings in evaluating whether they gave adequate notice of their DCHRA claims. The District concedes that the issue of notice under the DCHRA is ripe for resolution based upon the relevant documents.

Accordingly, the Court will deem the District's motion on that issue to be one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

The District's motion will be granted in part and denied in part. The Court concludes that forms submitted in the course of the Plaintiffs' employment were insufficient to satisfy the mandatory notice required by the D.C. Code for certain claims under the DCHRA. Consequently, Plaintiffs may only pursue claims for liquidated damages with respect to their claims of sex and sexual orientation discrimination regarding Officer Jones's non-promotion, Counts Two and Four, and hostile work environment based upon gender, Count Three, under the DCHRA. Finally, the District's motion will be granted with respect to Plaintiffs' constitutional claims, Counts Eleven through Thirteen.

## I. FACTUAL BACKGROUND

Beginning in early 2006, Plaintiffs became squad-car partners for the Metropolitan Police Department ("MPD"), assigned to patrol the Seventh District ("7D"). They began a lesbian relationship in July 2006. In September 2006, they informed one of their supervisors, Sergeant Jon Podorski, of their relationship. Second Am. Compl. [Dkt. 3] ¶ 10 ("Compl."). At the time, Commander Joel Maupin was the Commander of 7D and Sergeant Yurell Washington was the supervisor of the midnight shift.[1] *Id*. ¶ 9. Plaintiffs allege that "[a]lmost immediately thereafter, the Sergeants began harassing them and subjecting them to a hostile working environment on a frequent and continuing basis," and subjected them to harassment and disparate treatment "due to

---

[1] Other Sergeants alleged to have had supervisory authority over the Plaintiffs are Sergeant Roberts (no first name given), Sergeant James Lafranchise, Sergeant Craig (no first name given), and Sergeant Eric Leavenberry. In addition, Lietuenant Derek Larson was Officer Weeks's supervising lieutenant and Lieutenant Alan Hill was Officer Jones's supervising lieutenant. Compl. ¶ 9.

their sexual orientation and gender." *Id*. ¶ 11.  Plaintiffs complained to MPD in January 2007, and allege that thereafter their supervisors "blatantly retaliated against [them] for engaging in protected equal employment opportunity activity." *Id.* ¶ 12.  Plaintiffs allege that the District's actions were "based upon sex discrimination and/or sexual orientation discrimination and/or retaliation." *Id*. ¶ 14.

The Second Amended Complaint[2] ("Complaint") alleges multiple instances of discrimination and harassment, starting with frequent comments "denigrating Plaintiffs' sexual orientation and lesbian relationship" and "harass[ing] the Plaintiffs based upon gendered stereotype about how women should act and look." *Id*. ¶¶ 15, 19.  In addition, "Sergeants collectively harassed Plaintiffs about their work performance, leave and attendance, overtime requests, vehicle assignments, and work assignments" and imposed "unfair and unwarranted disciplinary action" in such a way that they were treated differently from male and heterosexual officers. *Id*. ¶ 33.

In support of their claims of gender discrimination, Plaintiffs allege they were called derogatory names based upon their sex, such as "drama queen," "the butch one," and the "the femme one" by Sergeants.  *Id*. ¶¶ 20, 21.  They also claim that Sergeant Washington made frequent comments "both to harass Plaintiffs about his perception of their roles in their lesbian relationship as well as to reflect his sex-based stereotyping of their appearance," *id*. ¶ 21, and that they were subjected to direct sexual comments and solicitations from male members of the MPD.  *Id*. ¶ 23.  Plaintiffs state that these types of harassing comments were made on a nearly daily basis from 2006 until the date their Complaint was filed.  *Id*. ¶ 28.

---

[2]  The District's motion addresses the First Amended Complaint.  Plaintiffs subsequently amended the Complaint to add clarifications and corrections.  Because the Second Amended Complaint is merely corrective, the District did not file a new motion.  The Court addresses the Second Amended Complaint in this Opinion.

Plaintiffs allege that they were not allowed to switch shifts in or around April 2007 because Commander Maupin issued a policy that officers could not switch shifts without a "body for a body." *Id*. ¶ 36. Plaintiffs claim this was a discriminatory policy because "heterosexual and male officers were allowed to change shifts without need for replacement." *Id*.

Plaintiffs also complain that they were subject to leave and attendance harassment unlike male officers, *id*. ¶¶ 53-54; and that Sergeant Podorski treated them differently than male and heterosexual officers when he refused to approve Plaintiffs' requests for overtime compensation and checked to see if Plaintiffs attended court appearances at the proper times. *Id*. ¶¶ 56-57. Plaintiffs allege that Sergeant Washington continued this pattern of checking in on Plaintiffs' whereabouts when they moved to the midnight shift in 7D and enforced leave policies in a discriminatory fashion. *Id*. ¶ 58.

Plaintiffs documented the alleged harassment in various ways. In October 2007, Plaintiffs filed MPD "Injury or Illness Reports," otherwise known as a PD 42 reports, describing stress-related injuries they suffered as a result of the conduct. Pls.' Opp'n [Dkt 7], Exs. 1, 2 [Dkt. 7-2, 7-3]. The Medical Services Division of MPD's Office of Human Resource Management issued determinations on October 30, 2007 and November 5, 2007 that such injuries were not work related. *Id*., Exs. 5, 6 [Dkt. 7-6, 7-7]. Plaintiffs also filed complaints (the "Internal EEO Complaints") based on sex and sexual orientation discrimination with the Equal Employment Opportunity Compliance Branch in MPD's Internal Affairs Division ("IAD") and gave statements regarding the alleged harassment and hostile work environment they suffered. Compl. ¶¶ 90, 119; Pls.' Opp'n at 14. On November 19, 2007, IAD decided not to investigate Plaintiffs' claims and informed them of their right to file a complaint with the D.C. Office of Human Rights ("OHR"). *Id*. ¶ 92. In addition,

4

Officer Weeks filled out a PD 119 "Complainant/Suspect Statement,"detailing alleged harassing statements made by Sergeant Washington in January 2008 after she filed her complaints. Pls.' Opp'n at 13.

Plaintiffs filed charges with the OHR in March 2008, which ultimately found probable cause that both Plaintiffs "had established prima facie claims of sexual harassment, hostile work environment based on sexual orientation (lesbian), and reprisal." Compl. ¶ 123. The OHR charges were cross-filed with the Equal Employment Opportunity Commission. *Id*. ¶ 122.

Plaintiffs allege that they faced harassment, hostility and retaliation after they filed these complaints. *Id*. ¶ 93. Specifically, Officer Jones alleges that she was given a lowered performance evaluation in late 2007. *Id*. ¶ 96. She also alleges that Sergeant Podorski withheld this performance evaluation and she was unable to obtain a copy until February 2008. This delay prevented her from grieving her evaluation and the lowered evaluation made her ineligible to apply for a promotion to Detective Class. *Id*. ¶ 97. In addition, Plaintiffs claim that Sergeant Washington's January statements, that were the subject of Officer Weeks's PD 119, were a form of retaliation and that Officer Weeks was called the "EEO queen" frequently. *Id*. ¶ 105. Allegedly, the discrimination continued after Officer Weeks became a Detective in October 2008 in the form of discriminatory assignments and counseling from Sergeant Avis King. *Id*. ¶¶ 106-10. Finally, Plaintiffs allege that Commander Maupin denied Officer Jones numerous training opportunities throughout 2010. *Id*. ¶ 112.

Plaintiffs advance the following claims:

- Counts One and Two – Sexual orientation discrimination in violation of the DCHRA;

- Counts Three and Four – Sex discrimination in violation of the DCHRA;

- Counts Five and Six – Sex discrimination in violation of Title VII of the Civil Rights Act of 1964;

- Counts Seven and Nine – Retaliation for protected employment activity in violation of the DCHRA;

- Counts Eight and Ten – Reprisal for protected EEO activity in violation of Title VII of the Civil Rights Act of 1964;

- Count Eleven – Action under 42 U.S.C. § 1983 for violation of their First Amendment Rights;

- Count Twelve – Action under 42 U.S.C. § 1983 for violation of their Fifth Amendment right to due process; and

- Count Thirteen – Action under 42 U.S.C. § 1983 for violation of their Fifth Amendment right to equal protection of the law based upon sex discrimination.

The District moves to dismiss all but the Title VII claims set forth in Counts Five, Six, Eight and Ten and the DCHRA claims set forth in Counts One, Seven, and Nine.

## II. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citations omitted).  Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief  "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  The facts alleged "must be enough to raise a right to relief above the speculative level."  *Id.*  Rule 8(a) requires an actual showing and not just a blanket assertion of a right to relief.  *Id.* at 555 n.3.  "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original).

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks and citation omitted).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face."  *Twombly*, 550 U.S. at 570.  When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

A court must treat the complaint's factual allegations as true, "even if doubtful in fact."  *Twombly*, 550 U.S. at 555.  But a court need not accept as true legal conclusions set forth in a complaint.  *Iqbal*, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Id*. at 1950.

### B. Summary Judgment

If, in considering a Rule 12(b)(6) motion, "matters outside the pleading are presented

to and not excluded by the court, the motion shall be treated as one for summary judgment and

disposed of as provided in Rule 56[.]" *Holy Land Found. for Relief and Dev. v. Ashcroft*, 333 F.3d

156, 165 (D.C. Cir. 2003) .   Where matters outside the pleadings are presented in a motion to

dismiss, the court must treat the motion as one for summary judgment under Rule 56.  Fed. R. Civ.

P. 12(b)(6).  With respect to the District's claim that Plaintiffs did not provide proper notice under

the DCHRA the Court will assess documents not referenced in the pleadings offered by Plaintiffs

in opposition to the District's motion.  The District agrees that these documents make the issue "ripe

for resolution." Def.'s Reply [Dkt. 9] at 15. Thus the Court will treat Defendant's motion as one for

summary judgment in that respect.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be

granted "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 247 (1986).  In ruling on a motion for summary judgment, the court must draw

all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence

as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the

mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  In addition, the

nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164

F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would

enable a reasonable jury to find in its favor. *Id*. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. ANALYSIS

### A.  DCHRA Claims

The District asserts that Counts Two, Three and Four[3] of the Complaint, which are brought under the DCHRA, must be dismissed for failure to comply with Section 12-309 of the D.C. Code.[4] This statute imposes conditions on the District's waiver of sovereign immunity, which are "mandatory as a prerequisite to filing suit against the District." *Barnhardt v. Dist. of Columbia*, 8 A.3d 1206, 1209 (D.C. 2010) (internal quotation marks and citations omitted). The law provides that:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report written by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

---

[3] Counts One, Seven, and Nine of the Complaint are also under the DCHRA. Count One brings claims of sexual orientation discrimination, which is unlawful under this Act. *See* D.C. Code § 2-1402.11. Counts Seven and Nine bring claims of retaliation in the form of hostile work environment and the non-promotion of Officer Jones. The District makes no claims regarding improper notice with respect to these counts.

[4] The District initially styled its motion as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In its Reply brief, the District also asks the Court to consider that these Counts of the Complaint should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that this Court does not have subject-matter jurisdiction to consider DCHRA claims because Plaintiffs failed to provide adequate notice to the District under § 12-309. The District is incorrect in this assertion; failure to comply with § 12-309 is not jurisdictional. *See Dellums v. Powell*, 566 F.2d 216, 229 (D.C. Cir. 1977).

D.C. Code § 12-309.

While not a statute of limitations, § 12-309 "imposes a notice requirement on everyone with a tort claim against the District of Columbia . . . ," *Barnhardt*, 8 A.3d at 1209, and also applies to claims for unliquidated damages under the DCHRA.[5] *Owens v. Dist. of Columbia*, 993 A.2d 1085, 1089 (D.C. 2010).  The notice requirement is justified by its goals:

> The rationale underlying the Section [12-]309 notice requirement is (1) to protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted.

*Dist. of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995).  "[B]ecause notice under § 12-309 is a condition precedent to filing suit, no right of action can be brought unless notice is given."[6] *Barnhardt*, 8 A.3d at 1212.  The purpose of § 12-309 "is not to nakedly extinguish as many claims against the District as possible, even when it would be unreasonable to require the claimant to give notice," but "to provide relevant and timely information that will enable the District of Columbia to investigate claims and prepare a defense."  *Id*. at 1212-13.

Section 12-309 should be construed narrowly in favor of the District.  For instance, the District of Columbia Court of Appeals has held that the doctrine of equitable tolling does not apply to this notice requirement.  *Barnhardt*, 8 A.3d at 1209 (citations omitted).

Plaintiffs argue that several reports made by the MPD during the course of the alleged

---

[5]  Notably, claims for liquidated damages are not covered by § 12-309.  *See Bonaccorsy v. Dist. of Columbia*, 685 F. Supp. 2d 18, 23 (D.D.C. 2010).

[6]  However, "§ 12-309 does not bar a claim if the claimant did not give timely notice because the claimant was justifiably, and completely, unaware that he or she had sustained any injury at all."  *Barnhardt*, 8 A.3d at 1211.

harassment and discrimination satisfy § 12-309 requirements.  They note that a written MPD report

taken in the "regular course of duty" is a statutory exception to the requirement of written notice to

the Mayor.  *See* D.C. Code § 12-309 ("A report written by the Metropolitan Police Department, in

regular course of duty, is a sufficient notice under this section.").  Such a report must contain the

same information given by any other notice under the statute and state "the approximate time, place,

cause, and circumstances of the injury or damage."  *Doe*, 697 A.2d at 27  (internal citations and

quotation marks omitted).

The cause element requires that a "written notice or police report must disclose both

the factual cause of the injury and a reasonable basis for anticipating legal action as a consequence."

*Washington v. Dist. of Columbia*, 429 A.2d 1362, 1366 (1981).  Even if a report does not assert a

right to recovery, it will suffice if it "describe[s] the injuring event with sufficient detail to reveal,

in itself, a basis for the District's potential liability."  *Id.*  The circumstances prong is satisfied if

there is enough information "for the District to conduct a prompt, properly focused investigation of

the claim."  *Id*.  The standard for the adequacy of a notice is not too stiff.  "[Section] 12-309's

requirements with respect to the *content* of the notice . . . are to be interpreted liberally, and in close

cases [courts should] resolve doubts in favor of finding compliance with the statute."  *Wharton v.

Dist. of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995) (citations omitted).

Plaintiffs specifically allege that the PD 42 and PD 119 reports they filed with the

MPD, MPD Medical Service Division memoranda written in response to Plaintiffs' PD 42 reports,

and IAD records created in response to Plaintiffs' Internal EEO Complaints were created in "the

regular course of duty" of the MPD and satisfy written notice requirements.[7]

PD 42 reports are titled "Injury or Illness Report" and provide space for officers to describe injury on-duty, injury off-duty, or illness on-duty. As a result of the alleged harassment, Officer Jones filled out a PD 42 report on October 7, 2007. She reported "that the work environment at the Seventh District is causing me to feel stressful." Pls.' Opp'n., Ex. 1 [Dkt. 7-2] at 1. A second PD 42 report, dated October 9, 2007, was filed by Officer Jones concerning "Nausea, Headaches and Stress" caused by "Seargent Yurell Washingtons Statements in Reference to Targeting Me Due to My Sexual Preference." *Id.* at 3 (errors in original). The October 9, 2007 report alleged that "[f]or approximately three weeks I have suffered headaches on and off, nausea, and chest pains due to Seargent Yurell Washington statements that he is targeting myself and Officer Weeks based on our sexual orientation." *Id* (errors in original). Both reports listed the date of injury as October 7, 2007. *Id*. at 1, 3.

Similarly, Officer Weeks completed a PD 42 report, on which she reported "Stress related nausea and headaches," caused by "An Official Discriminating Against Me Due To My

---

[7] Plaintiffs allege the PD 42 reports should not be considered by this Court in evaluating whether notice was proper under § 12-309 because these documents were not part of their Second Amended Complaint, and documents outside the pleadings should not be considered under Rule 12(b)(6). However, the PD 42 reports are explicitly referenced in the Complaint, *see* Compl. ¶ 118, and, therefore, are incorporated by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2001) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference . . . ." (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007))). However, the reports of the Medical Services Division, the PD 119 filed by Officer Weeks, and IAD investigative reports were not explicitly referenced in the Complaint. They are attached as exhibits to Plaintiffs' opposition to the District's motion. It is the Court's analysis of these documents that converts the District's motion with respect to the DCHRA counts to one for summary judgment. *See* Fed. R. Civ. P. 12(d).

Sexual Preference" on October 7, 2007.  Pls.' Opp'n, Ex. 2 [Dkt. 7-3] at 1.  In this report, she alleged

that she had been "inflicted with the onset of nausea, headaches, and bouts of nervousness." *Id*.  She

specifically stated that the listed symptoms were caused by Sergeant Washington's "derogatory

remarks and judgements based on his personal knowledge of my sexual preference." *Id*.  Officer

Weeks also filed a second PD 42 report on October 9, 2007 that made identical allegations. *Id*. at

3.

       The MPD's Medical Services Division issued memoranda on October 30 and

November 5, 2007, stating that the injuries listed on Plaintiffs' PD 42 reports were "Non-

Performance of Duty" related and, therefore, not qualified for workers' compensation. *Id.*, Exs. 5,

6 [Dkt ## 7-6, 7-7].  Each memoranda quoted extensively from the complaints on the PD 42 reports

regarding Sergeant Washington's alleged discrimination against Plaintiffs based on their sexual

orientation.

       In addition to the above-described reports, Officer Jones also filed a PD 119,

"Complainant/Suspect Statement," on January 22, 2008. *Id.*, Ex. 4 [Dkt. 7-5].  A PD-119 is a form

specifically "used by the [MPD] to record witness statements." *Stowell v. Dist. of Columbia Dept.

of Transp. Bureau of Motor Vehicle*, 514 A.2d 438, 444 n.12 (D.C. 1986).  On this form, she

complained of allegedly retaliatory comments made to her by Sergeant Washington on that date. *Id.*

at 1.  She alleged that Sergeant Washington followed her while she was trying to fill out arrest paper

work in the 7D station and yelled obscenities at her. *Id.*

       Finally, Plaintiffs submit IAD investigative records that grew out of their Internal

EEO Complaints.  In response to these Complaints, an IAD investigator took Plaintiffs' statements

regarding the alleged harassment and hostile work environment.  Compl. ¶¶ 90-92.  Plaintiffs rely

on IAD records consisting of: 1) notices to Officers Jones and Weeks of interviews in connection with an IAD confidential investigation, and 2) exit letters from the IAD dated November 19, 2007, stating that it would not accept Plaintiffs' claims of sexual orientation discrimination for investigation and referring their claims to the OHR as evidence of notice to the District of the claims Plaintiffs allege in the Complaint. Pls.' Opp'n, Exs. 7, 8 [Dkt. 7-8, 7-9].

The question is whether the PD 42 and PD 119 reports, the memoranda of the Medical Services Division, and the IAD investigative records qualify as "report[s] written by the Metropolitan Police Department, in regular course of duty," that can serve as "sufficient notice" under § 12-309.   As noted earlier, "police reports satisfy the § 12-309 requirement only if they actually notify the District of the injury claimed." *Fierson v. Dist. of Columbia*, 315 F. Supp. 2d 52, 56 (D.D.C. 2004).

The District challenges that the PD 42 reports and the Medical Services Division memoranda can serve as proper notice under § 12-309.   It contends that the PD 42 reports "were made by the plaintiffs to the police department" and were only internal personnel papers.  Def.'s Mem. in Supp. of Partial Mot. Dismiss [Dkt. 6] at 25.  The District worries that "[i]f reports made by police officers to the MPD were accepted as adequate notice [under §] 12-309, an anomalous situation would be created where police officers had greater rights than other District employees," whose injury reports to their own departments would not satisfy notice requirements. *Id*. at 25-26. The District contends that Plaintiffs' argument would expand the rights of police officers "to include all personnel complaints" and that, as a partial waiver of sovereign immunity, § 12-309 should be read narrowly. *Id*. at 26.

Notably, in *Fierson v. Dist. of Columbia*, the District did not dispute that PD 42

reports could be used to satisfy § 12-309.  The District discounts *Fierson* because the Court there did not *decide* that a PD 42 could satisfy § 12-309 in that the District agreed in *Fierson* that a PD 42 constituted a report written by the MPD "in the regular course of duty."  315 F. Supp. 2d at 55. But "[s]ick leave benefits are provided to MPD employees to help the police department conduct its *regular* business," Def.'s Reply at 16, and Plaintiffs were certainly using form PD 42 in the regular course of their duties.  Likewise, PD 119 reports are reports that are maintained in the regular course of MPD duty.  A PD 119 report records witness or complainant statements.  These reports are regularly used by police in investigating crimes and satisfy § 12-309 requirements.[8]

Finally, the Court has previously determined that IAD generated reports are reports created in the regular course of duty.  *See Shaw v. Dist. of Columbia*, No. 5-cv-1284, 2006 WL 1274765, at *12 (D.D.C. May 8, 2006) (Office of Internal Affairs complaint summary sheet sufficient to provide § 12-309 notice); *Stevens v Stover*, No. 85-cv-2035, 1986 U.S. Dist. LEXIS 22752, *9 (D.D.C. July 15, 1986) (finding that the MPD's IAD's "own reports and investigations" were sufficient to comply with § 12-309 requirements).  As a result, these documents may also be evaluated in determining whether § 12-309 requirements were met.

Nonetheless, the Court concludes that the content of these particular reports did not provide sufficient notice of "the approximate time, place, cause, and circumstances of the injury or damage" that underlie Counts Two, Three, and Four to satisfy § 12-309.

Count Three brings claims for a hostile work environment based upon sex discrimination under the DCHRA.  The reports upon which Plaintiffs rely gave notice of claims of

---

[8] Specifically, MPD officers are directed to  use the PD 119 to investigate events surrounding assaults on members of the MPD.  *See* MPD General Order 701.03 at 8 (Sept. 29, 2010) accessed at https://go.mpdconline.com/GO/PCA_701_03.pdf.

sexual orientation discrimination.   The PD 42 reports stated that Sergeant Washington's alleged harassment was based on "sexual orientation" and "sexual preference."   Pls.' Opp'n, Exs. 3, 4. While the Plaintiffs clearly conveyed the possibility of a discrimination complaint, it was a complaint of sexual orientation discrimination, not sex discrimination.   Likewise, the PD 119 report relied on by Plaintiffs did not detail any sexually harassing or discriminatory conduct.   Finally, the IAD investigative reports show that the claims that were investigated related to alleged sexual orientation discrimination.[9]

Individually or collectively, these reports do not provide sufficient information regarding the "cause" or "circumstances" of Plaintiffs' injuries alleged in Count Three.   While sex and sexual orientation discrimination may often accompany each other, they are different and it is plain that the alleged cause of Plaintiffs' injuries in these reports was sexual orientation discrimination.   As a result, the notices cited to by Plaintiffs did not disclose the "factual cause of the injury" sufficient to reveal sex discrimination as a basis for the District's liability nor would they have allowed it to reasonably anticipate a claim based upon such discrimination.   *See Washington*, 429 A.2d at 1366 ("written notice or police report must disclose both the factual cause of the injury and a reasonable basis for anticipating legal action as a consequence"); *id*. (a report will suffice if it "describe[s] the injuring event with sufficient detail to reveal, in itself, a basis for the District's

---

[9] The Medical Service Division Reports, likewise, describe the same reasons for the harassment the Plaintiffs suffered. The Medical Service Division Reports do include a quote from Officer Weeks stating: "I'm experiencing sexual harassment since revealing sexual orientation and relationship with a fellow officer." Pls.' Opp'n, Ex. 6 at 2.   They also include a quote from Officer Jones stating: "I've experienced sexual harassment since revealing my relationship with a fellow officer."  *Id*., Ex. 7 at 2.   While using the term sexual harassment, these statements are consistent with stating the causes of Plaintiffs' injuries are sexual orientation discrimination.

potential liability"). Likewise, the circumstances described in these reports did not provide information that would have allowed the District to conduct a "properly focused investigation" of the claimed sex discrimination. *Id*.

Counts Two and Four, concerning the non-promotion of Officer Jones, also lack the requisite notice to the District. These Counts allege the District intentionally acted to deprive Officer Jones of promotion opportunities based upon her sex and sexual orientation and that this was unlawful discrimination under the DCHRA. Officer Jones specifically alleges that she was given a lower performance evaluation and that this evaluation was intentionally withheld from her, which led her to suffer a deprivation of employment opportunities. Compl. ¶ 140. However, the documents that Officer Jones argues would provide sufficient notice under the DCHRA were actually created before the conduct giving rise to this claim took place. *Id*. ¶ 95. As a result, they could not provide notice of this injuring event.

Plaintiffs argue that they need further discovery to ascertain whether there are additional investigative records that "were created and maintained by the MPD with regards to Plaintiffs' internal charges of discrimination filed with the [IAD], that would also satisfy notice under section 12-309." Pls.' Opp'n, Ex. A  [Dkt. 7-1] ¶ 6. However, as discussed earlier, the IAD investigation was completed regarding sexual orientation discrimination and before the conduct giving rise to the injury that Plaintiffs allege in Counts Two and Four. As a result, further discovery would not help to rehabilitate Plaintiffs' lack of sufficient notice of the claims contained in Counts Two, Three and Four.

Because Plaintiffs did not provide proper notice, they may not pursue any claims for unliquidated damages under the DCHRA for Counts Two, Three, and Four of the Complaint.

However, Plaintiffs may still seek liquidated damages, including back pay,[10] under these Counts.

Under Counts Two and Four, Officer Jones alleges she was unable to apply for the rank of detective due to a missed performance evaluation and, therefore, was unable to obtain a promotion.  The District argues that damages under these Counts are unliquidated because "the amount of damages [Officer] Jones would be entitled to assuming her allegations bear out was uncertain on the day she received her evaluation.  On that day, it would be impossible to determine when a detective position might become available, who else might apply and when and if plaintiff might be selected to fill that position" Def.'s Reply at 25.  While this may be true, Officer Jones's damages would not have stemmed from the date of the evaluation, but from the date that she would have received her promotion had it not been for the missed performance evaluation.  Officer Jones may seek such liquidated damages with respect to these Counts.

Plaintiffs' claims under Count Three appear to seek unliquidated damages.  Count Three asserts hostile acts including "leave denial, shift changes, disparate assignments and details, disciplinary actions, negative performance evaluations, pay loss, non-promotion with respect to Plaintiff Jones, and denial of grievance and due process rights."  Some, if not all, of the claims based on these actions may be unliquidated because they were not, at the time they arose, for "an easily ascertainable sum." *Beeton*, 779 A.2d at 925.  To the extent that Count Three seeks unliquidated damages, it will be dismissed.

### B.  Constitutional Claims.

Plaintiffs bring claims against the District under 42 U.S.C. § 1983 for violations of

---

[10]  The D.C. Court of Appeals has recognized that back pay is a form of liquidated damage. *Beeton v. Dist. of Columbia*, 779 A.2d 918, 925 (D.C. 2001).

their constitutional right to due process and equal protection under the Fifth Amendment, and their right to free speech under the First Amendment. Section 1983 provides a private right of action against the government of the District of Columbia for a "deprivation of any rights, privileges, or immunities" if such a deprivation was " under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. To make out a claim under § 1983 against the District, Plaintiffs must: (1) establish a predicate constitutional violation, and (2) show that the constitutional violation was caused by a policy or custom of the District. *See Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

The District argues that the statute of limitations has passed on Plaintiffs' constitutional claims. The applicable statute of limitation for § 1983 claims against the District is three years. D.C. Code § 12-301(8); *see Welch v. Moore*, 1995 WL 418672 (D.C. Cir. June 19, 1995). Plaintiffs counter that they have "alleged a hostile work environment and a pattern of discrimination and harassment that began in late 2006 . . . [and] has continued unabated." Pls.' Opp'n at 22. The Plaintiffs contend that they suffered a "continuing violation," to which the three-year statute of limitations for discrete acts of discrimination is inapplicable. The continuing violation doctrine states that "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Plaintiffs urge the Court to consider all instances of "hostile work environment, sexual harassment, and reprisal harassment" when evaluating their claims. Pls.' Opp'n at 24.

*Morgan* rejected the continuing violations doctrine application to claims under Title VII and held that discrete discriminatory acts that happened before the statute of limitations time bar

cannot be the basis for a claim under Title VII, even if related to discrete acts within the limitations period. 536 U.S. at 113. The Supreme Court instructed that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id*. at 114. However, a hostile work environment claim is different in kind from one based on discrete acts; such a claim involves repeated conduct and the unlawful practice cannot be said to occur on any specific day. *Id*. at 115. Instead, a hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice." *Id*. at 117 (citing 42 U.S.C. § 2000e–5(e)(1)). In such a case, as long as some of the acts contributing to the violation happened within the limitations' period, a court may consider the entire period in which the hostile environment took place for the purposes of determining liability. *Id*. at 117.

Some Circuits have applied *Morgan's* reasoning to § 1983 claims. *See O'Connor v. City of Newark*, 440 F.3d 125, 127-29 (3d Cir. 2006); *Sharpe v. Cureton*, 319 F.3d 259, 267-68 (6th Cir. 2003); *Hildebrandt v. Illinois Dept. of Natural Res.,* 347 F.3d 1014, 1036 n.18 (7th Cir. 2003); *Carpinteria Valley Farms, Ltd. v. Cnty of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003). In *Sharpe*, the Sixth Circuit reasoned that "the policy justifications for Tennessee's legislative choice to establish a one year statute of limitations period as applicable to § 1983 claims are [no] less important than the congressional directive set forth in 42 U.S.C. § 2000e–5(e)(1), requiring the prompt filing of Title VII claims." 319 F.3d at 268. Relying on this case law, at least one Court in this Circuit has adopted *Morgan*'s holding with respect to the continuing violation doctrine when addressing discrete acts under § 1983. *See Turner v. Dist. of Columbia*, 383 F. Supp. 2d 157, 168-69

(D.D.C. 2005). *But see Brown v. Dist. of Columbia*, 251 F. Supp. 2d 152, 163 n.5 (D.D.C. 2003) (rejecting Morgan's application to statutory contexts beyond Title VII).[11]  This Court adopts the reasoning of the Third, Sixth, Seventh, and Ninth Circuits regarding this issue and find that *Morgan* applies to claims under § 1983.  All discrete acts that Plaintiffs allege occurred outside of the limitations period for § 1983 actions, in this case before January 25, 2008, are time-barred in this matter.

### 1. First Amendment Claim (Count 11)

Count 11 alleges acts that are discrete and fall outside of the statutory time period. It states that "Defendant[] . . .  deprived Plaintiffs of their First Amendment Right to freedom of speech by retaliating against them in response to their protected EEO activity.  Defendant[] . . . subjected Plaintiffs to negative performance evaluations, unfair disciplinary actions, and disparate detail and shift assignments . . . [and] refused to process compensation requests or routine paperwork . . . ." Compl. ¶ 196.

*Morgan* described "discrete acts" as those that constitute a "separate actionable unlawful employment practice."  The retaliatory practices listed by Plaintiffs constitute such discrete acts.  "[T]he First Amendment . . . protects state employees not only from patronage dismissals but also from even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights." *Rutan v. Republican Party*

---

[11]  Plaintiffs cite two cases for the proposition that the continuing violations doctrine applies to § 1983 claims.  However, in both, *Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78 (D.D.C. 2000), and *Brady v. Livingood*, 360 F. Supp. 2d 94 (D.D.C. 2004), the statute under question there was the Congressional Accountability Act ("CAA"), which has a statute of limitations of only 180 days and, therefore, is not directly comparable to the much longer statute of limitations in this case.  *See Livingood*, 360 F. Supp. 2d at 102.

*of Illinois*, 497 U.S. 62, 75 n.8 (1990) (internal citations and quotation marks omitted); *see also*

*O'Connor*, 440 F.3d at 127-28 ("First Amendment retaliation claims are always individually

actionable, even when relatively minor."). Moreover, the acts about which Plaintiffs complain are

acts already identified as discrete in nature in *Morgan*. 536 U.S. at 114 (identifying "failure to

promote [and] denial of transfer" as discrete acts). However, Plaintiffs also allege discrete retaliatory

incidents occurring after January 2008 that are not time-barred. *See* Compl. ¶¶ 97, 100, 109, 110,

112.

Nonetheless, Plaintiffs' Complaint fails to state a First Amendment cause of action.

There are limited instances in which a public employee's "speech" receives First Amendment

protections. In *Pickering v. Board of Education*, 391 U.S. 563, 572 (1968), the Supreme Court

recognized that public employees must be able to speak on matters of public concern without fear

of retaliation. 391 U.S. at 572. Since *Pickering*, the Supreme Court has cautioned that "when a

public employee speaks not as a citizen upon matters of public concern, but instead as an employee

upon matters only of personal interest, absent the most unusual circumstances, a federal court is not

the appropriate forum in which to review the wisdom of a personnel decision . . . ." *Connick v.

Myers*, 461 U.S. 138, 147 (1983). Thus, "to have a First Amendment cause of action," a public

employee "must have been speaking on a matter of public concern." *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994). Whether an issue is a matter of public concern is judged on "content, form, and

context." *Connick*, 461 U.S. at 148. "[A]n individual personnel dispute does not generally

constitute a matter of public concern." *Tao*, 27 F.3d at 639-40 (citing *Connick*, 461 U.S. at 639).

It is speech engaged in by public employees as *citizens* that is protected. *See Garcetti v. Ceballos*,

547 U.S. 410, 418 (2006); *Gray v. Lacke,* 885 F.2d 399, 411 (7th Cir. 1989) ("Although sexual

harassment may inherently be a matter of public concern [, a] court . . . must look to the point of the speech to see if the plaintiff addressed a matter of public or private concern.") (internal citations omitted)).

Plaintiffs' "speech" consisted of filing PD 42 forms detailing the ongoing harassment, *id*. ¶¶ 86, 87, 88, meeting with Commander Maupin to discuss their complaints, *id*. ¶ 89, filing internal MPD EEO complaints, *id*. ¶ 90, and their OHR complaints. *Id*. ¶ 121. Each of these instances of "speech" constituted personnel complaints; such speech does not receive First Amendment protection because it does not touch on issues of public concern and it has a full remedial scheme in Title VII and the DCHRA.

Plaintiffs' attempt to link their employment concerns to larger public issues about gay rights fails. In this regard, Plaintiffs cite their reporting of an incident to the MPD Gay and Lesbian Unit in which an officer made comments demeaning gays and lesbians during an arrest. Plaintiffs put too much weight on this single incident. Not only is it not pertinent to the workplace harassment challenged by Plaintiffs, but, like the deputy district attorney in *Garcetti v. Ceballos* who complained of faulty warrants, the Plaintiffs were reporting the mishandling of an arrest, which is part of their job function. *See* 547 U.S. at 421.

## 2. Due Process Claim (Count 12)

Count 12 of the Complaint alleges that the District denied the Plaintiffs their "basic rights to file grievances of negative performance evaluations and unfair disciplinary actions by Defendant, by failing to provide Plaintiffs with minimum due process of disciplinary actions against them and by failing to investigate their internal complaints of discrimination and harassment in accordance with Department policy." Compl. ¶ 202. The Fifth Amendment protects individuals

from the deprivation of "life, liberty, or property without due process of law." U.S. CONST. amend.

V. Plaintiffs' Opposition further elucidates that they are claiming a denial of procedural due process

based upon deprivation of a liberty interest within the meaning of the Fifth Amendment. However

framed, Count 12 is without merit and will be dismissed.

First, each instance of an alleged denial of a constitutional right to due process, if any,

constituted a separate, actionable, unlawful practice. *See Morgan*, 536 U.S. at 114. As a result, any

alleged denial of due process that occurred before January 2008, as did all but one, is barred by the

three-year statute of limitations for § 1983 claims.[12]

The sole remaining "due process" claim stems from a disciplinary investigation into

Officer Weeks's conduct when she took sick leave in October 2007, resulting in an AWOL charge.

Allegedly, the investigation was without notice and did not comply with departmental procedure,

---

[12] "The District of Columbia applies the 'discovery rule' to determine when a tort action accrues, whereby an action accrues when a plaintiff has knowledge of, or through the exercise of reasonable diligence should have knowledge of '(1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.'" *Sykes v. U.S. Attorney for the Dist. of Columbia*, 770 F. Supp. 2d. 152, 155 (D.D.C. 2011) (quoting *Goldman v. Bequai*, 19 F.3d 666, 671–72 (D.C. Cir. 1994)). Plaintiffs claim that the District failed to properly investigate their Internal EEO Complaints regarding discrimination and harassment in accordance with MPD's "procedures regarding the reporting and investigation of discrimination complaints," Compl. ¶ 205, accrued on November 19, 2007 when the MPD "made a determination not to investigate Plaintiff's [sic] complaints" and issued letters to this effect. *Id.* ¶ 92. Similarly, Officer Weeks's claim regarding unfair disciplinary procedures by Sergeant Washington for "Neglect of Duty" accrued in September of 2007 when the charge occurred. *See id.* ¶ 74. Finally, Officer Jones's claim that Sergeant Podorski failed to provide her a copy of her negative performance evaluation so that she could timely grieve the evaluation is also out of time. The Court takes judicial notice that the grievance deadline was January 15, 2008. Pls.' Opp'n, Ex. 13 at 13. Officer Jones would have known she was injured on the day the grievance deadline passed and therefore her claim based on the failure of Sergeant Podorski to provide her with a performance evaluation accrued on January 15, 2008. All of these claims were out of time on the date the Complaint was filed, January 25, 2011.

so that Officer Weeks did not learn about it until late 2008.[13]   Officer Weeks was eventually

successfully grieved the AWOL charge.  She alleges that she continues to be injured because the

"AWOL discipline record" remains in her file.  Pls.' Opp'n at 28.

This claim fails because "the range of interests protected by procedural due process

is not infinite." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  The interest

given constitutional protections must be more than "an abstract need or desire," *id.*, and must be

based on more than "a unilateral hope." *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465

(1981).  "'State regulations may give rise to a constitutionally protected liberty interest if they

contain substantive limitations on official discretion, embodied in mandatory statutory or regulatory

language.'" *Atherton v. Dist. of Columbia*, 567 F.3d 672, 690 (D.C. Cir. 2009) (quoting *Price v.

Barry*, 53 F.3d 369, 299 (D.C. Cir. 1995)).

Officer Weeks cites MPD's "own process and procedure" for initiating disciplinary

investigations and MPD General Orders regarding disciplinary actions as the basis for her liberty

interest. Pls.' Opp'n at 27.  These policies and procedures are not D.C. law and do not create liberty

interests. *Wanzer v. Dist. of Columbia*, 580 A.2d 127, 133 (D.C. 1990) ("Agency protocols and

procedures, like agency manuals, do not have the force or effect of a statute or an administrative

regulation."); *see also Abbney v. Dist. of Columbia*, 580 A.2d 1036, 1041 (D.C. 1990) (finding that

an MPD General Order did not carry the force of law).

The Complaint presents no constitutional due process claim.  Count 12 will be

dismissed.

---

[13]  Due to Officer Weeks's late discovery, the Court assumes for current purposes that this
claim is in time.

## 2. Equal Protection Claim (Count 13)

### a. Gender Discrimination

Count 13 alleges that the District "has by past practice and custom established a policy of favoring males over females and employees without protected EEO activity over those who engage in EEO activity . . . ."[14]  Compl. ¶ 210.  Plaintiffs state that they "have firmly established rights under the Fifth Amendment to Equal Protection under the law and to be free from discrimination on the basis of their gender . . . ."[15]  *Id*. ¶ 208.

However, Plaintiffs' allegations are not sufficient to state a claim for gender discrimination under § 1983.  Municipal liability under § 1983 must be predicated on an official custom, practice, or policy that caused the alleged constitutional violation.  *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978); *Triplett v. Dist. of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997).  A municipality cannot be held liable under a theory of *respondeat superior*.  *Monell*, 436 U.S. at 691.  The mere exercise of discretion by an employee is insufficient to hold a jurisdiction liable.  *Triplett*, 108 F.3d at 1453.  "To succeed, a plaintiff must show a course deliberately pursued by the city 'as opposed to an action taken unilaterally by a nonpolicymaking municipal employee,' . . .  and 'an affirmative link between the [city's] policy and the particular

---

[14] In paragraph 211 of the Complaint, Plaintiffs alleges "[t]he Department has selectively mistreated Plaintiffs on the basis of their gender, sexual orientation, and EEO activity when compared to other similarly situated males, heterosexuals, and non-EEO employees."  Though Plaintiffs make several allegations of sexual orientation discrimination, Plaintiffs make no equal protection claim on this ground.  Plaintiffs note that their equal protection claims are "based squarely in their claims for gender discrimination."  Pls.' Opp'n at 31.

[15] The equal protection clause of the Fourteenth Amendment applies only to the states, but "the due process clause of the Fifth Amendment, which is applicable to the District of Columbia, forbids discrimination which denies equal protection of the laws."  *Von Stauffenberg v. Dist. Unemployment Compensation Bd.*, 459 F.2d 1128, 1130 n.5 (D.C. Cir. 1972).

constitutional violation alleged.'" *Carter v. Dist. of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986)

(quoting *Oklahoma City v. Tuttle*, 105 S.Ct. 2427, 2436, 2439 (1985)) (alterations in original).

Causation may be shown if the municipality or a policy-maker adopted the policy that was the

"moving force behind the constitutional violation." *Warren v. Dist. of Columbia*, 353 F.3d 36, 39

(D.C. Cir. 2004) (quoting *Monell*, 436 U.S. at 694). "Or a policymaker could knowingly ignore a

practice that was consistent enough to constitute custom." *Warren*, 353 F.3d at 39 (citing *City of St.*

*Louis v. Praprotnik*, 485 U.S. 112 (1988)). "Egregious instances of misconduct, relatively few in

number but following a common design, may support an inference that the instances would not occur

but for municipal tolerance of the practice in question." *Carter*, 795 F.2d at 124.

      Plaintiffs have not sufficiently alleged that the MPD had a custom or policy of

discriminating against female officers. Aside from conclusory statements, Plaintiffs cite no official

policy that adversely effected women; nor do they allege any discriminatory practice pervasive

enough to be "so common and settled" as "to be considered  a custom or policy." *See Carter*, 795

F.2d at 125. Plaintiffs only allege gender discrimination that affected themselves. *See DuBerry v.*

*Dist. of Columbia*, 582 F. Supp. 2d 27, 39 (D.D.C. 2008) (finding against Plaintiff on his § 1983

claim because there was no evidence that any other employee was affected by the alleged policy).

Simply citing to their own experiences does not state a claim that Plaintiffs were the victim of a

policy or custom that caused them to suffer injury.

### b.  Equal Protection Claims based on Plaintiffs' "EEO activity"

      Count 13 also alleges that the District "has by past practice and custom established

a policy of favoring . . . employees without protected EEO activity over those who engage in EEO

activity . . . ." Compl. ¶ 210. Plaintiffs define "protected EEO activity" as activity "under Title VII

of the Civil Rights Act of 1964, as amended." *Id*. ¶ 208.  Title VII makes it unlawful for an employer to discriminate because an employee that "has opposed any practice made an unlawful employment practice" by Title VII.  42 U.S.C. § 2000e-3.[16]  In this case, Plaintiffs' "protected EEO activity" consisted of reporting "illegal sexual harassment and retaliation to their supervisors." *Id*. ¶ 194.

Plaintiffs are foreclosed from bringing claims under § 1983 for retaliation.  "[W]hen the only § 1983 cause of action is based on a violation of Title VII," a plaintiff's "exclusive remedy" is provided by Title VII.  *Day v. Wayne Cnty. Bd. of Auditors,* 749 F.2d 1199, 1204 (6th Cir. 1984). Thus, the right to be free from retaliation for protected activity under Title VII must be remedied by Title VII and not § 1983.  *See Long v. Laramie Cnty. Community College Dist.*, 840 F.2d 743, 752 (10th Cir. 1988) (holding that allegations of employer retaliation are properly governed by Title VII and cannot support a claim under § 1983); *cf. Great American Fed. Savings & Loan Ass'n. v. Novotny*, 442 U.S. 366, 375-76 (1979) (rights created by Title VII cannot be the basis for an action under 42 U.S.C. § 1985(3)).

Because neither of Plaintiffs' constitutional claims of discrimination make out a cognizable claim under § 1983, Count 13 of the Complaint will be dismissed.

### IV. Conclusion

The District's partial motion to dismiss, Dkt. 6, will be granted in part and denied in part.  Plaintiffs' failure to comply with notice requirements under the DCHRA will lead to limitations on the damages they may seek under Counts Two, Three, and Four of the Second

---

[16] Discrimination based upon sex is an unlawful employment practice under Title VII.  42 U.S.C. § 2000e-2.

Amended Complaint.  Plaintiffs' constitutional claims found in Counts Eleven, Twelve and Thirteen will be dismissed.  While the District is incorrect that all of these claims are barred by the relevant statute of limitations, the Plaintiffs have failed to state claims sufficient to subject the District to liability for these alleged violations.  A memorializing Order accompanies this Memorandum Opinion.


Date: July 25, 2012                                   _____/s/_____
                                                                    ROSEMARY M. COLLYER
                                                                    United States District Court