UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TONIA L. JONES, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 11-215 (RMC) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Without explanation, the District of Columbia Office of Human Rights consistently fails to cite the statutory language of the D.C. Human Rights Act when it dismisses a complaint administratively. This leaves it to judges to figure out later what the agency intended. Such intrusion would be unnecessary and inappropriate if the agency followed its own statute. This case demonstrates the problem.

Defendant District of Columbia moves for judgment in its favor on all claims in Plaintiffs' Third Amended Complaint that are based on the D.C. Human Rights Act. Plaintiffs initially filed those claims with the D.C. Office of Human Rights, which investigated, found probable cause, and then dismissed "administratively." The District argues that Plaintiffs may proceed in court only if the dismissal was for "administrative convenience," as provided by D.C. Code § 2-1403.16(a) and caselaw. It contends that the nature and language of the dismissal establish that the dismissal was for the convenience of Plaintiffs and not the D.C. Office of Human Rights. Plaintiffs oppose.

It is a very close question. After Plaintiffs posed certain questions to the agency and the District of Columbia agreed to dismissal, the D.C. Office of Human Rights dismissed.

1

The agency did not say that its dismissal was for "administrative convenience." These half measures allowed both parties to make strong arguments on how the Court should interpret the agency's action. As explained below, and despite some discomfort, the Court concludes that the D.C. Office of Human Rights dismissed Plaintiffs' complaints for administrative convenience. It, therefore, will deny the motion.

## I. FACTS

Plaintiffs Tonia L. Jones and Kenniss M. Weeks are female officers in the District of Columbia's Metropolitan Police Department (MPD). They became squad car partners in early 2006 and began a lesbian relationship in July 2006. At that time, Plaintiffs were both assigned to the same patrol service area within the Seventh District under the supervision of Sergeant Jon Podorski. Plaintiffs informed Sgt. Podorski of their relationship in September 2006. They allege that thereafter they suffered ongoing harassment from superior officers and disparate treatment. They further allege that, after they complained to MPD in January 2007, their supervisors blatantly retaliated against them. *See* Third Am. Compl. [Dkt. 26] ¶¶ 3-112. Because the alleged discrimination is not relevant to the immediate issue, the Court will not detail the lengthy allegations.

### A. The DCOHR Complaints

After following internal MPD procedures, Plaintiffs filed formal charges of discrimination based on sexual orientation with the D.C. Office of Human Rights (DCOHR) on March 31, 2008, based on the D.C. Human Rights Act (DCHRA), D.C. Code § 2-1401.01 *et seq*. They amended their complaints with DCOHR on December 23, 2008, to include charges of gender discrimination, sexual harassment, and reprisal. These latter charges were cross-filed

with the U.S. Equal Employment Opportunity Commission (EEOC) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  *Id.* ¶¶ 121-122.

DCOHR investigated Plaintiffs' allegations and, on July 16, 2010, issued a probable cause finding in Plaintiffs' favor on their complaints of gender discrimination, sexual orientation discrimination, and reprisal.  The parties then attempted conciliation through DCOHR's mediation program.  Those efforts, however, ended unsuccessfully in August 2010.  *Id.* ¶¶ 123-124.

During the course of mediation, Plaintiffs learned of a DCOHR policy to *not* award compensatory damages or attorneys' fees to employees of the District.  *See* Opp'n [Dkt. 39], Ex. 1 (Jan. 4, 2011 Letter to DCOHR) (erroneously dated 2010) [Dkt. 39-2] at 3.  This information prompted Plaintiffs to write to Alexis P. Taylor, DCOHR General Counsel on January 4, 2011.  Plaintiffs sought "written opinions" from Ms. Taylor "on two lingering questions which could greatly affect [Plaintiffs'] rights: (1) whether [Plaintiffs] may withdraw their claims and proceed to court *de novo* prior to the [DC]OHR hearing; and (2) the basis of [DCOHR's] position that District employees are not entitled to attorney[s'] fees or compensatory damages before [DC]OHR."  *Id.* at 1.

Plaintiffs told Ms. Taylor that DCOHR's mediator had "indicated that [Plaintiffs] might still have rights to pursue their claims *de novo* in court," citing *Weaver v. Gross*, Civ. Nos. 84-1944 & 84-1945, 1986 WL 7553 (D.D.C. Apr. 25, 1986), *Jones v. Management Partnership, Inc.*, Civ. No. 82-2854, 1983 WL 143571 (D.D.C. July 22, 1983) and *Blake v. American College of Obstetricians & Gynecologists*, 608 F. Supp. 1239 (D.D.C. 1985).  Plaintiffs also told Ms. Taylor that opposing counsel representing the District of Columbia had indicated that *de novo* review in court was still possible and preferable. Jan. 4, 2011 Letter to DCOHR at 2.  However,

Plaintiffs also noted that Ms. Taylor's office previously had directed them to *Adams v. District of Columbia*, 740 F. Supp. 2d 173 (D.D.C. 2010), a decision in which Judge Ricardo Urbina of this Court followed the D.C. Court of Appeals' decision in *Anderson v. U.S. Safe Deposit Co.*, 552 A2d 859 (D.C. 1989) and dismissed a lawsuit because the plaintiffs had withdrawn their administrative claims after DCOHR had found probable cause.[1]

Not "want[ing] to jeopardize [their] DCHRA claims by withdrawing from [DC]OHR given the tenuous legal landscape," Plaintiffs asked Ms. Taylor to "issue a formal opinion or position statement on this issue." Jan. 4, 2011 Letter to DCOHR at 2. As an alternative, Plaintiffs proposed that DCOHR dismiss Plaintiffs' complaints for administrative convenience. Plaintiffs already had made a similar request before, but DCOHR, without explanation, had declined to dismiss. *Id.* at 3.

On January 24, 2011, the District sent a letter to DCOHR stating that it consented to the dismissal of Plaintiffs' administrative complaints. Opp'n, Ex. 3 (Jan. 24, 2011 Letter from the District) [Dkt. 39-4] at 1. On that same day, the Director of DCOHR dismissed Plaintiffs' administrative complaints via a "consent" order. *See* Mot. for J. on Pleadings (MJP) [Dkt. 33], Ex. A (DCOHR Consent Order) at 1. The order read in its entirety:

> On January 4, 201[1], Complainants Weeks and Jones, through their attorneys, sent correspondence requesting that the Office of Human Rights . . . render an opinion regarding the following issues: 1) whether . . . Complainants may withdraw their [DCHRA] claims (after a probable cause finding) and proceed to court *de novo*, prior to a hearing before an Independent Hearing Examiner; and 2) the basis for [DC]OHR's opinion that District

---

[1] When this Court is interpreting a District of Columbia statute, it defers to constructions of the statute by the D.C. Court of Appeals. *See Adams*, 740 F. Supp. 2d at 189 n.14 (federal courts in this jurisdiction treat interpretations of local statutes by the D.C. Court of Appeals "'as if they were rendered by the highest court of a State on questions of state law, with the exception that the Court will interpose its own judgment when it detects an egregious error.'" (quoting *United States v. Edmond*, 924 F.2d 261, 264 (D.C. Cir. 1991)).

4

> employees are not entitled to attorneys['] fees or compensatory damages. Because of the broad implications [of] this matter, the [DC]OHR declines to render these opinions at this time; in the alternative, the [DC]OHR agrees to dismiss the complaints since a final decision on the merits has not been issued.
>
> Therefore, the [DC]OHR ADMINISTRATIVELY DISMISSES WITHOUT PREJUDICE . . . .

*Id.* No merits hearing before a hearing examiner had been scheduled or convened when the dismissal order was issued.

### B. The Instant Litigation

Plaintiffs filed their initial Complaint in federal court on January 25, 2011. It alleged discrimination on the bases of sex, sexual orientation, and reprisal for engaging in protected equal employment opportunity (EEO) activity, in violation of Title VII;[2] the DCHRA; and deprivation of civil rights in violation of 42 U.S.C. § 1983.[3] Plaintiffs filed a Second Amended Complaint on May 25, 2011, which was clarified by the Third Amended Complaint that the Court permitted to be filed on December 28, 2012.

On October 7, 2013, the District moved to dismiss Plaintiffs' DCHRA claims. *See* MJP. Plaintiffs opposed, but both parties decided to move forward with discovery. On April 15, 2014, the Court heard oral argument on the District's motion. The Court took the motion

---

[2] The Court notes that Mses. Jones and Weeks received their respective right to sue letters from EEOC on April 5 and 8, 2011, more than two months after commencing litigation in this Court. Such notices are "condition precedent[s] to the initiation of . . . Title VII civil action[s]." *See Williams v. Washington Metro. Area Transit Auth.*, 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983) (citing 42 U.S.C. § 2000e-5(f)(1)). The D.C. Circuit, however, has determined that "[r]eceipt of a right-to-sue notice during the pendency of the Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court." *Id.* Accordingly, although Plaintiffs initially failed to exhaust their administrative remedies for their Title VII claims, the EEOC's subsequent issuance of right to sue letters cured this defect.

[3] The Court dismissed Plaintiffs' constitutional claims on July 25, 2012. *See* Mem. Op. [Dkt. 15] & Order [Dkt 16].

under advisement and directed the parties to file supplemental briefing, which they did on April 30, 2014. *See* Supp. Opp'n [Dkt. 53]; Supp. Mem. [Dkt. 54]. The motion is now ripe.

## II. LEGAL STANDARDS

Federal court jurisdiction arises under Title VII, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331, 1343, and 1367. Because the alleged discrimination occurred in the District of Columbia, and Plaintiffs are employed by the District of Columbia, venue is proper here as well. *See* 28 U.S.C. § 1391(b)(1) and (2).

The District seeks dismissal pursuant to a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or for summary judgment under Rule 56. Rule 12(c) provides, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings is treated as one for summary judgment, however, where "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d); *see also McGovern v. Martz*, 182 F. Supp. 343, 349 n.19 (D.D.C. 1960). Here, both parties rely on facts set forth in exhibits attached to their briefs. Accordingly, the Court will treat the District's motion as one for summary judgment.

Summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

Under the DCHRA, "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction . . . *unless* such person has filed a complaint" with DCOHR. D.C. Code § 2-1403.16(a) (emphasis added). The D.C. Court of Appeals has explained that this statutory provision requires an election of remedies. *See Anderson*, 552 A.2d at 862-63. Court jurisdiction is mutually exclusive from that of the administrative process at DCOHR "in the first instance." *Brown v. Capitol Hill Club*, 425 A.2d 1309, 1311 (D.C. 1981). Once a party files an administrative complaint with DCOHR, she may not transfer her case to a court unless: "(1) [DC]OHR dismisses the complaint for 'administrative convenience' or (2) the complainant withdraws her [DC]OHR complaint before [DC]OHR has decided it." *Carter v. District of Columbia*, 980 A.2d 1217, 1223 (D.C. 2009) (citing D.C. Code § 2-1403.16(a)).

7

Federal judges in this jurisdiction once took a more expansive view of the DCHRA, finding that a complainant before DCOHR could move her DCHRA claims to court even after the agency had made a probable cause finding.  For instance, in *Jones*, Judge Flannery permitted a plaintiff to move her case from DCOHR to federal court even though the agency had found probable cause because the plaintiff withdrew her administrative complaint before the matter proceeded further.  1983 WL 143571, at *8.  The *Jones* Court reasoned that "administrative action[s] [are] very much alive" after a probable cause determination, and, therefore, permitting transfers to a court at that point do not "present the danger . . . of disappointed administrative claimants receiving an undeserved second opportunity to press their claims."  *Id.*; *see also Blake*, 608 F. Supp. at 1241 (describing *Jones* approvingly for its determination that withdrawal from DCOHR after a finding of probable cause but before a merits hearing permits a subsequent suit in court); *Weaver*, 1986 WL 7553, at *4 ("[A] plaintiff alleging discrimination in proceedings before the Office of Human Rights may preserve her alternative judicial remedy by withdrawing her administrative complaint, even after the Office has found probable cause for discrimination, if her withdrawal occurs before an actual hearing on the merits is held.")

The D.C. Court of Appeals, however, has explicitly addressed, and discarded, this Court's view of the DCHRA.  In 1989, *Anderson* held that *Jones* and its progeny were simply "incorrect."  552 A.2d at 861.  *Anderson* explained that D.C. Code § 2-1403.04 forecloses litigation of DCHRA claims in court once DCOHR completes its investigation, which the D.C. Court of Appeals interpreted to mean the issuance of a probable cause finding.  *Id.* at 861-63.  Therefore, unless a complaint is withdrawn before a decision is made on probable cause, *or* is dismissed by DCOHR for "administrative convenience," "having made his election [to file an

8

administrative complaint], [a person is] barred from proceeding in court." *Id.* at 862 (citing *Allison v. Bd. of Educ.*, 333 N.Y.S.2d 261 (Sup. Ct. Nassau County 1972)).[4]

After receiving complaints of discrimination from Mses. Jones and Weeks, DCOHR investigated and, on July 16, 2010, formally determined that there was probable cause to believe Plaintiffs had suffered harassment and reprisal based on their sexual orientation and protected activity. It was decidedly later—on January 24, 2011—when the agency "administratively dismiss[ed] without prejudice." DCOHR Consent Order at 1 (lower case substituted). Thus, under D.C. law as expressed in *Anderson*, Plaintiffs can proceed in court *only* if DCOHR dismissed for its own administrative convenience.

The District of Columbia contends that the administrative dismissal of Plaintiffs' DCHRA complaints was at the request, and for the convenience, of Plaintiffs, and not the convenience of DCOHR. That is, Plaintiffs wanted to sue in federal court where they could clearly seek compensatory damages and attorney fees. *See* MJP at 7 n.1 ("It appears that [P]laintiffs sought dismissal of their complaints when they realized after the probable cause determination and after conciliation efforts failed that they could not get attorney[s'] fees or compensatory damages."). The District notes that Plaintiffs had asked for two formal opinions, neither of which addressed or affected the merits of their discrimination charges. Therefore, according to the District, DCOHR's refusal to provide such advisory opinions did not relate to any administrative "convenience" that would stem from avoiding a merits hearing on Plaintiffs' complaints. Further, the District argues that since Plaintiffs themselves sought dismissal, DCOHR's dismissal cannot have been for its own administrative convenience as a matter of law.

---

[4] *Anderson* also rejected the analyses in *Blake* and *Weaver* that filing a charge with DCOHR tolled the D.C. statute of limitations for initiating a court suit. "In our view," the D.C. Court of Appeals held, "neither Federal holding can be supported" because the policies behind Title VII and the DCHRA are not the same. 552 A.2d at 862.

9

Plaintiffs protest that they never *withdrew* their complaints and only sought dismissal under terms that would allow them to sue in court. Specifically, they wrote to DCOHR's General Counsel: "we again request that the Director consider dismissing our clients' cases for 'administrative convenience,' which is the other statutory means by which [Plaintiffs] would be able to pursue their claims in court and, [sic] their claims for attorneys['] fees and compensatory and other monetary damages." Jan. 4, 2011 Letter to DCOHR at 3; *see also id.* at 5 ("[W]e respectfully . . . again renew our request for your Office to dismiss this matter 'for administrative convenience' so [Plaintiffs] are free to pursue their claims in Court."). Plaintiffs urge the Court to find that DCOHR "'administratively dismissed' [their] complaint[s] as an 'alternative' to opining on legal questions holding 'broad implications' for the Office." Supp. Opp'n at 1-2.

As an initial matter, the language that DCOHR used in dismissing Plaintiffs' administrative claims is confounding.[5] The DCHRA is clear: after a probable cause finding, a complainant can take her case to court *only* if DCOHR dismissed for "administrative convenience." D.C. Code § 2-1403.16(a). But DCOHR ignores its own statute, dismisses "administratively," and leaves it to judges to interpret its intentions. It is difficult to understand this practice. Using the correct language, when and if that is DCOHR's intention, would be easy and provide a level of clarity that obviates judges from second-guessing DCOHR in a manner that appears meddlesome and inappropriate. In this particular instance, DCOHR's thinking is particularly opaque and deciphering its meaning is particularly uncomfortable. Were not the rights of people at issue, this Court would decline to accept DCOHR's administrative dismissal as relying on a "convenience" the agency could not bother to state.

---

[5] Plaintiffs contend that "OHR never . . . denotes its administrative dismissals, instead leaving to the courts the responsibility for gleaning its intent." Opp'n at 1 n.2.

In trying to discern whether DCOHR dismissed a complaint for its own "administrative convenience," courts have focused on the basis for a dismissal. The "key" consideration is whether DCOHR's dismissal constituted an "exercise of prosecutorial discretion not to commit resources to the claim," *Carter*, 980 A.2d at 1224, "for example because . . . EEOC will handle it, or because [DC]OHR concludes that 'the complainant can be made whole without the need for formal proceedings.'" *Id.* (quoting *Timus v. D.C. Dep't of Human Rights*, 633 A.2d 751, 760 (D.C. 1993) (en banc)). In the context of DCOHR complaints, dismissal for administrative convenience is "a housekeeping decision by the agency, important but strictly administrative, about how best to expend its scarce resources." *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 574 (D.C. 2007).

None of these definitions of administrative convenience quite satisfies the immediate circumstances. While Plaintiffs' questions appear to have provoked DCOHR's dismissal, those questions did not concern the merits of Plaintiffs' claims or the agency's willingness or resources to conduct a merits hearing on them. Rather, Plaintiffs asked for certainty as to the scope of available remedies if they succeeded in the administrative process compared to litigation in court. Citing *Timus*, Plaintiffs argue here that DCOHR's dismissal must have been for administrative convenience because DCOHR's sole authority to dismiss complaints after a finding of probable cause is for "administrative convenience." While *Timus* stated "that a dismissal under § 716.9 of [DCOHR's procedural] rules [must be] a dismissal on the grounds of administrative convenience . . . for otherwise the Office would have no statutory authority to dismiss the complaint," 633 A.2d at 760 (internal quotations omitted), the facts of that case diminish its applicability here. The complainant in *Timus* rejected an offer of settlement made during conciliation provided by DCOHR. The agency thought that the

11

settlement offer was satisfactory and decided that it would be unnecessary to conduct a merits hearing. Therefore, DCOHR dismissed the complaint "administratively." That left the complainant in limbo: unable to be heard before DCOHR and unable to sue in court. Through its interpretation of the DCHRA, the D.C. Court of Appeals deemed DCOHR's dismissal to be for "administrative convenience," which allowed the complainant to have her case heard in court. *Id.* ("[W]e regard a decision by [DC]OHR not to commit scarce prosecutorial resources to a trial-type hearing before the Commission, when in its judgment the complainant can be made whole informally, as a classic exercise of prosecutorial discretion.").

Plaintiffs are not caught in a similar limbo not of their own making. Through counsel, Plaintiffs clearly set forth the contrasting decisions from this Bench, before *Anderson* and after it. They noted that Judge Urbina followed the direction of the D.C. Court of Appeals in his decision in *Adams v. District of Columbia*, and explicitly sought dismissal for "administrative convenience" so that they could transfer their DCHRA claims to federal court and gain the benefit of additional available remedies. DCOHR dismissed "administratively" and "without prejudice." Thus, the agency failed to speak with clarity (omitting "administrative convenience") but did give Plaintiffs the opportunity to return to the administrative process ("without prejudice"). Fully informed of the legal landscape and attendant risks, Plaintiffs then moved their case to federal court.

Nonetheless, the Court gleans from the meager record before it that DCOHR dismissed Plaintiffs' claims for administrative convenience. Plaintiffs asked Ms. Taylor to commit the agency to the availability of specific remedies through its administrative processes and to opine officially on the availability of recourse to court after a probable cause determination. (Since, as an agency of the District of Columbia, DCOHR cannot disagree with

12

the D.C. Court of Appeals, this latter question is puzzling.) The questions concerning remedies were not yet ripe as Plaintiffs had not proved their complaints on the merits. Perhaps DCOHR declined to expend its resources issuing advisory opinions. Perhaps more importantly, neither Plaintiffs nor the District of Columbia wanted to litigate in the administrative forum. Notably, the Director of DCOHR issued his vague consent order on the very day that the District informed DCOHR it had no objection to dismissal of Plaintiffs' complaints. *See* Jan. 24, 2011 Letter from the District at 1; DCOHR Consent Order at 1.

The best that can be said is that DCOHR decided to not allocate its resources to a matter that both parties seemed to prefer litigating in federal court. Such a dismissal was unrelated to the merits of Plaintiffs' claims or the availability of agency resources to litigate Plaintiffs' complaints administratively. DCOHR might have preferred not to opine officially on the availability of administrative remedies for D.C. employees, since its reputed policy might have been more a budget limitation than a legal judgment. Certainly, DCOHR did not tie its refusal to opine to administrative convenience, so one cannot know for certain. This Court will leave to another day, or, preferably, the D.C. Court of Appeals, to determine whether, having found probable cause, DCOHR can claim "administrative convenience" to decline to proceed to a merits hearing merely because both parties prefer to move the litigation to a court.[6] Because that question is uncertain under D.C. law, this Court errs on the side of Plaintiffs, whose complaint was found to have probable cause.

---

[6] Because the Court finds that DCOHR dismissed Plaintiffs' claims for administrative convenience, it need not reach Plaintiffs' contention that the District is judicially estopped from arguing that the dismissal was not for administrative convenience.

13

## IV. CONCLUSION

For the reasons stated above, the Court finds that DCOHR dismissed Plaintiffs' DCHRA complaints for administrative convenience and will deny the District's Motion for Judgment on the Pleadings, Dkt. 33. A memorializing Order accompanies this Memorandum Opinion.

/s/
ROSEMARY M. COLLYER
Date: May 19, 2014                         United States District Judge